UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

V.                                                              Cr. No. 04-CR-10301 MLW

ANTONIO NAKIA REDRICK

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS DUE TO PROSECUTORIAL MISCONDUCT

Now comes the Defendant, Antonio Redrick, and submits this Memorandum of Law and Fact in support of his Motion to Dismiss the Indictment.

## FACTUAL BACKGROUND

Antonio Nakia Redrick was indicted for being a Felon in Possession of a Firearm and a related charge. Mr. Redrick was arrested on June 4, 2004 on Columbia Road in Boston. In his duffel bag, officers recovered a 20 guage shotgun, which the government alleges was "sawed-off."

On June 24, 2004, Mr. Redrick met a fellow prisoner in MCI Concord named Eddie Ray. Both parties had a prior relationship with a woman named Tiffany Richardson. She was Mr. Redrick's ex-girlfriend, and Ray had met her after Redrick and Richardson had broken up. Richardson told Ray that she had found out that Mr. Redrick was 'cheating' on her. Ray had lengthy discussions with Ms. Richardson about her plan to get revenge on Mr. Redrick, which involved her getting ahold of a gun. She even went so far as to ask Ray to get a gun for her, for the price of $2,000.00. Ray declined. When Ray found out what happened to Mr. Redrick, he wrote an Affidavit explaining Ms. Richardson's plan.

The Ray Affidavit has several factors that lend credibility to the story. Firstly, Mr.

-1-

Redrick was arrested after leaving Ms. Richardson's home. Mr. Redrick was also carrying the Adidas duffel bag which Ray was shown by Ms. Richardson. Mr. Redrick was arrested for possession of a gun. Finally, it is notable that the gun was broken and basically non-functional at the time the police recovered it.

Mr. Redrick submitted the Affidavit to the government. On June 3, 2005, ATF agents went to South Bay House of Corrections to interrogate Ray as to the contents of the Affidavit. The ATF report relating to that interview is attached as Exhibit "A." According to that report, Ray recanted the Affidavit, and stated that Mr. Redrick wrote the entire Affidavit. According to the report, the ATF officers drafted a second Affidavit recanting the first, and Ray signed it.[1]

Undersigned counsel was informed of this recantation by telephone by the government. Counsel went to interview Ray at South Bay on June 7, 2005. At that point, he told counsel that the ATF told him that Mr. Redrick had "plead out" and was facing time. They told him that if he (Ray) did not recant the original Affidavit, he would be charged with perjury and obstruction of justice. Ray related that he told the ATF agents he had a lawyer, but they told him that he didn't need one. *See* Affidavit of Melvin Norris dated July 22, 2005.

Counsel reviewed the original Affidavit with Ray line by line, and Ray affirmed that the Affidavit was true. He also related that Mr. Redrick was not his cellmate, but that he had heard Mr. Redrick's story and recalled the conversations with Tiffany Richardson. *Id.*

On July 7, 2005, ATF agents returned again to interviewed Eddie Ray. They interrogated him about his conversations with undersigned counsel. The report of this interview is attached as Exhibit "B." In their report, the ATF agents acknowledged lying to Ray in the earlier interview

---

[1] Counsel has not been provided with this Affidavit referred to in the ATF report.

regarding Mr. Redrick pleading guilty. Allegedly, this is done to get information. Ray refused to cooperate with ATF Agents, and was restrained by Corrections Officers to remain in the interrogation until the ATF agents were finished. "Ray then got up and attempted to leave the interview room. S/A Donahue ordered Ray to sit down, which he ignored. It was not until several corrections officers entered the room that Ray returned to his seat."

Prior to the end of the interview, Ray restated the facts that were in the original Affidavit. The ATF agents then concluded that Ray was not being truthful, and terminated the interview.

## ARGUMENT

1. <u>The coercive interviews by ATF agents were designed to intimidate Ray into recanting his testimony, and depriving Mr. Redrick of his defense.</u>

From the moment that the agents entered the room to interview Ray, they intended to make him recant the Affidavit. They told him that Redrick already "plead out," and that if Ray did not recant at that time they would prosecute him for perjury and obstruction of justice. The fact that Ray was actually fooled by this ploy is revealed during the second interview, when he got angry at the Agents for lying to him. It is somewhat strange that the Agents explain that lying to Ray is an "investigative technique" used to elicit the truth from another person.

By coercing Ray into the original recantation, the Agents accomplished several things. Firstly, they obtained evidence (the supposed affidavit and testimony of the Agents) which would discredit Redrick's defense. Secondly, they obtained lethal impeachment evidence against Redrick, regardless of the truth of the recantation. Thirdly, they actually wrote (according to their report) an affidavit for Ray to sign which would make devastating impeachment evidence against

Ray if he is called as a witness. Essentially, this tactic has denied Redrick of a substantial ground of defense.

Any suggestion that these interviews were non-coercive is belied by the account given of the second interview by agents themselves. They acknowledge that Ray was angry about the misrepresentation of Redrick's status. They also acknowledge that they did not allow Ray to terminate the second interview until they were done with him, and actually recruited "several corrections officers" to essentially force him to speak to the agents. Then, when Ray states something that conflicts with the Agents' objective, they discredit it as untruthful and terminate the interview.

A fair reading of the reports written by the ATF Agents reveals that the circumstances of the interviews were coercive and the goal was to discredit the original Affidavit submitted on behalf of Redrick. The tactics used by ATF Agents, including lying and threatening legal action (and later forcing Ray to stay in an interview with agents without benefit of counsel) all point to a coercive environment where Ray was pressured into recanting the events set forth in his Original Affidavit.

2. <u>This conduct by the government is gross and unreasonable, and has deprived Mr. Redrick of a fair and just trial.</u>

Several things are notable about these interviews which make them unique. Firstly, the interview was a custodial interview, without the benefit of counsel. Then agents threatened Ray with additional charges if he did not cooperate with them by recanting the Affidavit. After they tell him that Redrick has already plead guilty and that he will be prosecuted, Ray recants to

placate the agents, believing that his truthfulness will not matter because it will not hurt Redrick at that point. Finally, after undersigned counsel interviewed Ray, agents arrive and again interrogate him, using correctional officers to force Ray to speak with Agents, again without benefit of an attorney.

Overall, this conduct has deprived Mr. Redrick of his defense by (1) depriving Redrick of a witness who can "freely" make a decision to testify, and (2) "tricking" Ray into providing impeachment evidence, not only against Mr. Redrick but against himself. This conduct was not merely an interview by agents, which is a routine practice by the government. In this case, they misrepresented the status of Redrick's case, they threatened Ray, and they forced him to converse with them using other government agents. This is not only misconduct on the part of the government, but it has left Mr. Redrick in a position where he has been deprived of his right to a fair trial by the actions of the government.

Not only is the testimony of Ray relevant to Mr. Redrick's defense, it would help defeat an element of the government's case. Should Ms. Richardson be found by a jury to have "planted" the gun in Mr. Redrick's bag, the element of "knowing" possession of the firearm would be negated. Therefore, the government's actions may very well have the effect of denying Mr. Redrick his ability to disprove an essential element of the government's case.

3.  <u>As a result of this misconduct, the Indictment must be dismissed with prejudice.</u>

Under the Sixth Amendment to the United States Constitution, the accused has a right to compulsory process for obtaining witnesses in his favor. The Sixth Amendment right is violated when the government arbitrarily deprives the defendant of testimony that would have been

"relevant and material, and ... vital to the defense." *See generally United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982), *quoting Washington v. Texas*, 388 U.S. 14 (1967).

"Due process guarantees that a criminal defendant will be treated with "that fundamental fairness essential to the very concept of justice. In order to declare a denial of it [a Court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982), *citing Lisenba v. California*, 314 U.S. 219, 236 (1941). A violation of due process exists "if the government's conduct interfered substantially with a witness's 'free and unhampered choice to testify. That interference may involve threats of prosecution, or other intimidating conduct." *United States v. Pinto*, 850 F.2d 927, 932 (2d Cir. 1988) (citations omitted).

There are two general requirements for reversible prosecutorial misconduct. Firstly, the conduct must have been improper, and secondly the conduct "must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Golding*, 168 F.3d 700, 702 (4th Cir, 1999) (citations omitted). Various courts have found that threats to prosecute a defense witness on the basis of that witness' testimony are prejudicial and destroy the fundamental fairness of a proceeding by preventing a witness from testifying freely. *See e.g. id; United States v. Viera*, 819 F.2d 498, 499 (5th Cir. 1987); *United States v. Morrison*, 535 F.2d 223 (3rd Cir. 1976) (involving repeated warnings from prosecutor about the dangers of perjury). The behavior of the Agents in this case rose to the level of threats to prosecute a witness, and these threats, taken together with the actions of the Agents, will prejudicially affect the defendant's right to a fair trial.

In the instant case, Mr. Redrick's case was irreparably prejudiced by the actions of the ATF Agents. The Agents' tactics and actions "interfered substantially with [Ray's] free and unhampered choice to testify." *See Id.* Ray states that he was threatened with prosecution for perjury or obstruction of justice if he did not recant. Furthermore, Ray's testimony is vital to Redrick's defense in this case. *Compare United States v. Pina*, 2003 U.S. Dist. LEXIS 1529 (D. Mass. January 31, 2003) (Saris, J.) (where witness had not previously given exculpatory testimony or indicated a desire to give exculpatory testimony).

There is another prejudicial aspect to the government's actions. Not only may Ray be faced with a difficult choice, but Mr. Redrick's ability to testify will be strongly influenced by the actions of the government. Ray told the ATF on June 3, 2005 that "it was Redrick who wrote the entire affidavit and asked Ray to sign it." This would present impeachment evidence that would not be available to the government absent their misconduct. The further dimension is that Ray, in addition to being impeached by his own statements, may be forced into the position of asserting his Fifth Amendment privileges to protect against government retaliation. This would deprive Redrick of Ray's testimony and/or the ability to cross examine Ray regarding the Affidavit.

The defendant recognizes that not all times that a government agent informs a potential witness of the consequences of testifying are a violation of the Sixth Amendment. *See e.g. United States v. Hayward*, 6 F.3d 1241,1257 (7th Cir. 1997); *United States v. Bieganowski*, 313 F.3d 264, 292 (5th Cir. 2002). "[I]t is not improper per se for a trial court judge or prosecuting attorney to advise prospective witnesses of the penalties for testifying falsely. But warnings concerning the dangers of perjury cannot be emphasized to the point where they threaten and intimidate the witness into refusing to testify." *United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir. 1982)

(citations omitted).

The actions of the government agents in this case go beyond mere "information" given to Ray. By their actions, they have forced Ray into a position where he may be prosecuted for testifying due to the contents of the two allegedly conflicting affidavits. As such, Ray has little ability to "testify freely," and he is under severe pressure to testify favorably to the government lest he be prosecuted later. "[T]he constitutional right of a criminal defendant to call witnesses in his defense mandates that they be free to testify without fear of governmental retaliation." *United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987), *citing United States v. Blackwell*, 694 F.2d 1325, 1334 (D.C.Cir. 1982). *See also United States v. Goodwin*, 625 F.2d 693, 703 (5th Cir. 1980) ("Threats against witnesses are intolerable. Substantial government interference with a defense witness' free and unhampered choice to testify violates due process rights of the defendant.").

The threats and actions by ATF Agents have deprived Mr. Redrick of his Sixth Amendment right to call witnesses, and have cast doubt on the legitimacy of this trial.

## CONCLUSION

In this case, the threats and coercive techniques used by the government agents have resulted in a situation where Mr. Redrick will most likely be deprived of a witness who substantially corroborates his defense. The conduct of the government agents in this case goes far beyond a mere warning about perjury; it involved deception, drafting an Affidavit for Ray, and forcing him to speak with agents against his will.

Without Ray as a witness, Mr. Redrick's case will be substantially harmed. The conduct of the government agents in this matter has resulted in a "Hobson's choice" for both the defendant and the defendant's main witness; testify and be impeached and/or prosecuted for perjury, or fail

to testify and render the trial both unjust and unreliable. As a result, the just remedy is a dismissal of the charges against Mr. Redrick with prejudice.

                                      Respectfully Submitted

                                      /S/ MELVIN NORRIS
                                      Melvin Norris
                                      260 Boston Post Rd. Suite 9
                                      Wayland, MA. 01778
                                      Tel. 508 358 3305
                                      BBO # 373900

Dated:       July 22, 2005

DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
REPORT OF INVESTIGATION

| ADDRESSED TO: Special Agent in Charge, Boston Field Division | MONITORED INVESTIGATION INFORMATION: Boston Field Division FY-05 Report 011 | EXHIBIT A |
| --- | --- | --- |
| TITLE OF INVESTIGATION: REDRICK, Antonio | | |
| CASE NUMBER: 762020-04-0058 | REPORT NUMBER: 11 | |

TYPE OF REPORT: *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
| --- | --- | --- | --- |
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY *(Name)* Richard W. Donahue | SUBMITTED BY *(Title and Office)* Special Agent, Boston II Field Office | SUBMITTED BY *(Date)* 06/06/2005 |
| --- | --- | --- |
| REVIEWED BY *(Name)* Thomas E. D'Ambrosio | REVIEWED BY *(Title and Office)* Group Supervisor, Boston II Field Office | REVIEWED BY *(Date)* |
| APPROVED BY *(Name)* William J. Hoover | APPROVED BY *(Title and Office)* Special Agent in Charge, Boston Field Division | APPROVED BY *(Date)* |

## DESCRIPTION OF ACTIVITY:
Interview of Eddie Ray Jr.

## SYNOPSIS:
On 6/3/05 ATF S/A's Donahue and Ball interviewed Eddie Ray Jr. at the South Bay House of Corrections.

## NARRATIVE:

1. On 6/3/05, ATF S/A's Donahue and Ball interviewed Eddie Ray Jr., an inmate at the South Bay House of Corrections. S/A Donahue asked Ray about the affidavit that he wrote on 6/24/04 concerning the Antonio REDRICK case. In this affidavit, which was apparently signed by Ray while he was incarcerated at the Concord State Prison, Ray writes about his knowledge of REDRICK being framed by Tiffany Richardson for his 2004 gun arrest.

2. Ray immediately told S/A Donahue that the entire affidavit was false. He said that he was approached by REDRICK while the two were incarcerated together in Concord, and that REDRICK asked for his help. Ray said that he has trouble reading and writing, and it was REDRICK who wrote the entire affidavit and asked Ray to sign it. Ray said that he agreed to sign the false affidavit because he felt sorry for REDRICK and he was angry at "the system". Ray said that he immediately regretted signing the affidavit, but didn't think it would be a big deal.

ATF EF 3120.2 (5-98)

**DEPARTMENT OF JUSTICE**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**
**REPORT OF INVESTIGATION**

Page 2 of 2

| ADDRESSED TO: | MONITORED INVESTIGATION INFORMATION: |
|---|---|
| Special Agent in Charge<br>Boston Field Division | Boston Field Division<br>FY-05<br>Report 011 |

| TITLE OF INVESTIGATION: |
|---|
| REDRICK, Antonio |

| CASE NUMBER:<br>762020-04-0058 | REPORT NUMBER:<br>11 |
|---|---|

3. When asked to write a new affidavit, Ray once again told S/A Donahue that he had trouble writing, and requested that S/A Donahue write it for him. S/A Donahue wrote a brief statement outlining the details that Ray had explained. When read back to him, Ray said that he agreed completely with that which S/A Donahue had written. Ray signed the new affidavit, which was witnessed by S/A Ball.

**Attachments:**
1. ATF Form 5000.1, Affidavit
2. Eddie Ray affidavit, dated 6/24/04

ATF EF 3120.2 (5-98)

DEPARTMENT OF JUSTICE
BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES
**REPORT OF INVESTIGATION**

Page 1 of 2

| ADDRESSED TO: Special Agent in Charge, Boston Field Division | MONITORED INVESTIGATION INFORMATION: Boston Field Division, FY-05, Report 012 |
|---|---|
| TITLE OF INVESTIGATION: REDRICK, Antonio | EXHIBIT B |
| CASE NUMBER: 762020-04-0058 | REPORT NUMBER: 12 |

**TYPE OF REPORT:** *(Check Applicable Boxes)*

| X | REPORT OF INVESTIGATION | | COLLATERAL REPLY |
|---|---|---|---|
| | REPORT OF INTELLIGENCE | | |

| SUBMITTED BY (Name): Richard W. Donahue | SUBMITTED BY (Title and Office): Special Agent, Boston II Field Office | SUBMITTED BY (Date): 07/13/2005 |
|---|---|---|
| REVIEWED BY (Name): Thomas E. D'Ambrosio | REVIEWED BY (Title and Office): Group Supervisor, Boston II Field Office | REVIEWED BY (Date): |
| APPROVED BY (Name): William J. Hoover | APPROVED BY (Title and Office): Special Agent in Charge, Boston Field Division | APPROVED BY (Date): |

**DESCRIPTION OF ACTIVITY:**
Interview of Eddie Ray

**SYNOPSIS:**
On 7/7/05, S/A's Donahue and DeSantis interviewed Eddie Ray at the South Bay House of Corrections.

**NARRATIVE:**

1. On 7/7/05, ATF S/A's Donahue and DeSantis interviewed Eddie Ray, an inmate at the South Bay House of Corrections. S/A Donahue asked Eddie Ray about a conversation Ray had with Mel Norris, Antonio REDRICK'S attorney, on 6/7/05 at the South Bay HOC. S/A Donahue asked Ray if he told Mel Norris that the affidavit he (Ray) signed for S/A Donahue on 6/3/05 was false. Ray immediately became agitated and told S/A Donahue that S/A Donahue had lied to him when he told him that REDRICK had already pleaded guilty. Ray was referring to the fact that during their first meeting on 6/3/05, S/A Donahue told him that Antonio REDRICK had pleaded guilty. Ray said that he found out from Mel Norris on 6/7/05 that REDRICK had not pleaded guilty and in fact had a trial scheduled for the month of August. S/A Donahue explained to Ray that telling him about REDRICK plead guilty was just an investigative technique that is used on occasion to illicit truthfulness from somebody whom the investigator feels may be less than willing to tell the truth.

2. At this point in the interview Ray became angry and began to raise his voice to the S/A's. S/A Donahue asked Ray repeatedly if the affidavit he signed on 6/3/05 was true or false. Ray refused to answer the

ATF EF 3120.2 (5-98)

**DEPARTMENT OF JUSTICE**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**
**REPORT OF INVESTIGATION**

Page 2 of 2

| ADDRESSED TO: Special Agent in Charge Boston Field Division | MONITORED INVESTIGATION INFORMATION: Boston Field Division FY-05 Report 012 |
|---|---|
| TITLE OF INVESTIGATION: REDRICK, Antonio | |
| CASE NUMBER: 762020-04-0058 | REPORT NUMBER: 12 |

question. S/A Donahue told Ray that he would more than likely be called to testify at REDRICKS' trial, and at that point he'd have to be truthful as to which of the two conflicting affidavits he signed was accurate. Ray told S/A Donahue that he wouldn't be testifying at any trial, and said he was done with the whole case. Ray told the S/A's that he has no respect for the law, and he doesn't care who orders him, he wouldn't be testifying. Ray then got up and attempted to leave the interview room. S/A Donahue ordered Ray to sit down, which he ignored. It was not until several corrections officers entered the room that Ray returned to his seat.

3. Prior to ending the interview, S/A Donahue asked Ray if he had ever met with Tiffany Richardson. Ray said that he had. S/A Donahue asked Ray if Tiffany Richardson told him that she was going to "set up" Antonio REDRICK by planting a gun in his belongings. Ray said that she did tell him that. S/A's Donahue and DeSantis believed that Ray was not being completely truthful at this point and ended the interview.

ATF EF 3120.2 (5-98)