UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ANTONIO NAKIA REDRICK, )<br>Defendant. )<br>) | Criminal No.  04-10301-MLW |

GOVERNMENT'S SENTENCING POSITION

The United States of America, by and through its attorneys, United States Attorney

Michael J. Sullivan and Assistant United States Attorney Paul R. Moore, respectfully submits

this brief government's position on the sentencing of the above-captioned defendant, ANTONIO

NAKIA REDRICK, to assist the Court during the upcoming sentencing hearing in the above-

captioned matter, which is scheduled to occur on May 31, 2006, at 3:00 p.m.  The defendant is

represented by Melvin Norris, Esq.

ISSUES TO BE RESOLVED

The defendant, through his counsel, has offered a Motion for Downward Departure to a

"more appropriate criminal history category."[1]  It is unclear to the government what sentence is

being advocated by the defendant, other than that it ought to involve less punishment than that

outlined in the PreSentence Report.  In sum, the defendant argues that the "totality of the

circumstances" provide a basis for a downward departure.  He cites his former claim of

governmental misconduct and argues that he was deprived of the benefit of a witness (Eddie

---

[1]"Defendant Antonio Redrick's Motion for Downward Departure," p. 4, paragraph 1.

Ray, Jr.) whose testimony might have made his guilty plea unnecessary.[2]  Repeatedly, Mr. Redrick asserts that he was deprived of his fundamental rights as a result of the government's actions and left with no alternative but to plead.

In his Motion, the defendant alleged, over and over, that he was deprived of his fundamental rights and that he was, in effect, forced by the acts of the government and rulings of this Court, to plead guilty.

The defendant then offered the argument that his Criminal History Category (as outlined in the PreSentence Report) overstates the seriousness of his criminal history.  He argues that it is a history which is "mostly non-violent, juvenile, and/or property offense crimes" which should place him in a criminal history category other than VI (without specifying which category would be appropriate).[3]

Finally, the government believes that the Court should determine whether, in light of the assertions contained within his Motion the defendant has truly accepted responsibility for the offense conduct to which he pleaded guilty on February 24, 2006.[4]  At this time, the government believes that the defendant strongly implies, without precisely saying as much, that he was

---

[2]"Defendant Antonio Redrick's Motion for Downward Departure," p. 1, paragraph 2 states that "He picked up a duffel bag with his belongings from the home of Ms. Richardson on the day that he was arrested, and in that duffel bag was a 'sawed off' shotgun.  Mr. Redrick was leaving the building when he was confronted by police, fled, and was arrested for possession of the firearm."  At p. 2, paragraph 4, the defendant asserts that "...despite this Court's granting of immunity to Mr. Ray, he refused to speak with undersigned counsel and Mr. Redrick, because of the uncertainty regarding Mr. Ray's testimony, was unable to proceed to trial in this matter."  At p. 2, paragraph 5, the defendant asserts that this Court denied his Motion to Dismiss, "despite the enormous prejudice that the government's actions caused to Mr. Redrick."  At p. 2, paragraph 6, the defendant flatly states that the government's investigative techniques "...precluded him from presenting his defense fully."  Finally, at page 4, paragraph 2, the defendant flatly asserts that "...he was unable to exercise his right to trial due in large part to the actions of the government.  Because his counsel was unable to speak with Eddie Ray before trial, this uncertainty left the defendant with no alternative but to plead guilty."

[3]"Defendant Antonio Redrick's Motion for Downward Departure," p. 4, paragraph 1.

[4]Attachment "A" is a transcript of the entire Plea Hearing on February 24, 2006.

innocent and that the firearm was planted in his duffel bag by Ms. Richardson.[5]

Either the defendant is guilty of the crimes to which he indicated his guilt on February 24, 2004, (having been sworn and in response to the inquiries of the Court) or he is not. If the defendant maintains his guilt, he cannot then simultaneously launch an attack on his potential sentence by relying on the implication that he was deprived of a witness at trial whose testimony may have proven his innocence.

The government respectfully urges the Court to address this matter. Should the Court be satisfied that the defendant is fully accepting responsibility for his actions (as he indicated at the Plea Hearing), the government will support a three-point reduction in the Total Offense Level (as anticipated in the PreSentence Report).

### SUMMARY OF PROMISES CONTAINED WITHIN THE PLEA AGREEMENT

The defendant pleaded guilty *without* a written plea agreement with the United States. As a result, there are no promises (written or otherwise) contained within a plea agreement.

### MAXIMUM PENALTIES

The defendant pleaded guilty to both counts of the two-count Indictment. For each count, the maximum penalties include: up to ten (10) years of imprisonment, a fine of up to $250,000.00 (for Count 2, the maximum fine is $10,000.00), up to three (3) years of supervised release and a mandatory special assessment of $100.00.

### GOVERNMENT'S SENTENCING POSITION

As a preliminary matter, the government objects to the Defendant's Motion for Downward Departure. The factual basis for the assertions contained within the Motion simply

---

[5] See the assertions referenced in Footnote 2, above.

do not support the Motion.

Importantly, the defendant repeatedly asserts that he was deprived of, in essence, a material witness and was, therefore, forced to plead guilty. Despite the government's offer of immunity to the witness, he implies that he was deprived of a trial, despite the Court making clear to the defendant at the sentencing hearing that he fully retained that right and that trial could begin the following Monday, as scheduled, should defendant wish to proceed.[6]  The Court then very precisely described the elements the government would have to prove beyond a reasonable doubt ("....that you knowingly, that is, intentionally – not by accident or mistake, but knowing that you had it, possessed a firearm, and that that firearm, whether you knew it or not, had traveled in interstate commerce. Do you understand that that's what the Government would have to prove?")[7] On each inquiry by the Court, the defendant indicated that he understood the full meaning of the Court's statement. The Court then asked the defendant, having fully described the elements of the crime, whether the defendant committed the crime charged in Count One of the Indictment. The defendant replied, without elaboration or hesitation, in the affirmative.[8] The same exchange then occurred with regard to Count Two of the Indictment.[9] The Court then directed the government to describe the offense conduct in detail, which the government did. The Court then asked the defendant if he agreed with the government's summary. The defendant then indicated that he did agree and the Court accepted his plea of

---

[6]Transcript, Sentencing Hearing, p. 9 and 10.

[7]Transcript, Sentencing Hearing, p. 11.

[8]Transcript, Sentencing Hearing, p. 12.

[9]Transcript, Sentencing Hearing, p. 12-13.

"guilty."[10]

Defendant's counsel further repeatedly asserted that he was not afforded the opportunity to talk to Mr. Ray (the material witness).[11]  That very broad assertion is not entirely accurate, as defendant's counsel had indeed spoken with Mr. Ray at the prison facility where Mr. Ray was incarcerated and at which ATF special agents interviewed him on two occasions (as established at length at the Motion Hearing).  Furthermore, it should be noted that Mr. Ray was never placed on the defendant's (filed) notices of its intended witnesses, even though the trial had been anticipated for several months following defendant counsel's meeting with Mr. Ray in June of 2005.  Testimony at the Motion hearing indicated that the defendant's efforts to cultivate Mr. Ray as his witness were quite limited (prison records indicated only one meeting between counsel and the witness and no placed calls between counsel and the witness). If Mr. Ray was a critical witness - capable of exonerating the defendant - then that flame appears to have been, at most, a dimly flickering one.  The government, therefore, continues to question the defendant's assertion that he was, somehow, truly deprived of an important trial witness - particularly after the government sought the Court's order of immunity for Mr. Ray.

The government recommends to this Court that the defendant receive the following sentence: a period of imprisonment at the middle of the guideline range (70 months), no fine as the defendant appears unable to pay any fine, unless the Court should determine that the defendant is able to pay a fine, in which case the government would recommend a fine at the

---

[10]Transcript, Sentencing Hearing, p. 16.

[11]Transcript, Sentencing Hearing, p. 3 ("That's correct.  I would like to say, for the record, though, that counsel for Eddie Ray advised me that his client, Eddie Ray, would not talk to me"), and "Defendant Antonio Redrick's Motion for Downward Departure at page 2, paragraph 4 ("...despite this Court's granting of immunity to Mr. Ray, he refused to speak with undersigned counsel...").

low-end of the guideline range, which the government (and the Probation Office) believes to be
$6,000.00, a period of supervised release of three (3) years (for each count, to run concurrently),
and a mandatory special assessment of $100.00 for each count of conviction.

GOVERNMENT'S RATIONALE FOR ITS SENTENCING POSITION

The government often recommends a sentence at the low-end of the guideline range in
matters where the defendant decided to plead guilty.  In the current matter, the government takes
exception to the defendant's assertion that his criminal history is overstated by the findings
outlined and fully described in the PreSentence Report.  To the contrary, this defendant has a
record of criminal charges which includes possession of firearms and violence (see PreSentence
Report, paragraphs 36 (possession of a firearm at age 17), 37[12] (armed robbery at age 19), 38
(carrying a dangerous weapon at age 21), and 41 (larceny of a motor vehicle / negligent
operation so as to Endanger at age 21)).  Defendant's history of adult arraignments carry indicia
of violent intentions and a tendency to use firearms or other improvised weaponry in the pursuit
of those intentions (See PreSentence Report, paragraphs 51 (assault with a dangerous weapon
[handgun] at age 180, 52 (armed robbery and felony assault at age 18), 54 (stalking and
intimidation of witness at age 18), 56 (assault and battery at age 28), 59 (possession to distribute
a class B substance at age 29), 61 (carrying a firearm and resisting arrest at age 29) and 62
(malicious destruction and threatening at age 29).

From the government's point of view, it appears that the calculations of the guidelines do

---

[12]Court records presented in paragraph 37 of the PreSentence Report establish that while he has been incarcerated, the defendant has a thoroughly demonstrated penchant for violence against other inmates ("the defendant received a disciplinary report on June 25, 1997 for fighting with another inmate with a metal weapon, the lid of a can partially covered with cloth.  The defendant sliced the victim who sustained several lacerations.  As a sanction, the defendant was required to serve 18 months...." and "on November 10, 1999, the defendant received a disciplinary report for stabbing another inmate with a 6 1/2-inch sharpened plexiglass-type weapon.  As a result of this incident and his prior offenses, the defendant was sanctioned to serve 3 years in DDU."

not fully account for the tendency toward domestic abuse by this defendant (presented in the

PreSentence Report at paragraph 60 and more fully described at paragraph 81 through 84).

Significantly in this matter, the defendant had been ordered to avoid contact with Ms. Tiffany

Richardson and her children.  At the time of his offense conduct, that is precisely where the

defendant was seen walking back and forth near her apartment - with a sawed-off shotgun in his

duffel bag.  A 911 call was then placed by the apartment complex manager, who was familiar

with Mr. Redrick and the abuse prevention order.[13]  This does not appear to be an isolated

instance where the defendant was engaged in threatening behavior against a person whom he had

been ordered to avoid.

Thus, in order to better account for the domestic violence aspect of the defendant's

offense (and related previous conduct for which no enhancements occur under the guidelines),

the government believes that a period of incarceration at the mid-range of the guidelines (70

months) is warranted.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Paul R. Moore
       Paul R. Moore
       Assistant U.S. Attorney

DATE: May 23, 2006

CERTIFICATE OF SERVICE

---

[13]The recording of this call has been presented to the defendant (as part of pre-trial discovery) and is available to the Court upon request or direction.  If the Court so ordered, the government believes it could produce the caller as a witness (now the former apartment manager of the complex in which Ms. Richardson then resided at the time of the offense conduct).

I hereby certify that a true copy of the above document was served upon the attorney for defendant, ANTONIO NAKIA REDRICK, Melvin Norris, Esq., on May 23, 2006, via electronic filing and notification.

/s/ Paul R. Moore
Paul R. Moore
Assistant U.S. Attorney