```
 1              UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS

 3                              No. 04-cr-10301-MLW

 4

 5  UNITED STATES OF AMERICA

 6

 7
    vs.
 8

 9
    ANTONIO NAKIA REDRICK
10

11

12                    *********

13

14               For Hearing Before:
                 Chief Judge Mark L. Wolf
15

16                    Plea Change

17
                 United States District Court
18               District of Massachusetts (Boston.)
                 One Courthouse Way
19               Boston, Massachusetts 02210
                 Friday, February 24, 2006
20

21                    ********

22
             REPORTER: RICHARD H. ROMANOW, RPR
23                  Official Court Reporter
                 United States District Court
24       One Courthouse Way, Room 5200, Boston, MA 02210
                       (617) 737-0370
25
```



```
 1                    A P P E A R A N C E S

 2

 3   PAUL R. MOORE, ESQ.
        United States Attorney's Office
 4      John Joseph Moakley Federal Courthouse
        1 Courthouse Way, Suite 9200
 5      Boston, Massachusetts 02210
        (617) 748-3700
 6      Email: Paul.moore@usdoj.gov
        For the United States of America
 7

 8   MELVIN NORRIS, ESQ.
        Law Office of Melvin Norris
 9      260 Boston Post Road, Suite 9
        Boston, Massachusetts 01778
10      (508) 358-3305
        For the defendant
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              (Begins 3:30 p.m.)
 3              THE CLERK:  This is Criminal Matter 04-10301, the
 4    United States versus Antonio Redrick.  The Court is in
 5    session.  You may be seated.
 6              THE COURT:  Good afternoon.  Would counsel please
 7    identify themselves for the Court and for the record.
 8              MR. MOORE:  Good afternoon, your Honor.  Paul Moore
 9    for the United States.
10              MR. NORRIS:  Good afternoon, your Honor.  Melvin
11    Norris for Antonio Redrick.  Mr. Redrick is at counsel table.
12              THE COURT:  All right.  I understand Mr. Redrick
13    would like to plead guilty to both counts of the indictment.
14    Is that correct?
15              MR. NORRIS:  That's correct.  I would like to say,
16    for the record, though, that counsel for Eddie Ray advised me
17    that his client, Eddie Ray, would not talk to me.  And I would
18    just like to get that on the record.
19              THE COURT:  Okay.  Have any promises been made to
20    Mr. Redrick in connection with the plea?
21              MR. NORRIS:  Nope.  No, there's no plea agreement.
22              THE COURT:  Well, that's what I'm trying to
23    clarify.  And the firearm in question here was, allegedly, a
24    .20 gauge shotgun which had an overall length of less than 26
25    inches and a barrel of less than 18 inches.  Is that correct?
```

1          MR. MOORE:  It is, your Honor.
2          THE COURT:  And would the evidence have shown that
3   it was operable?
4          MR. MOORE:  Yes, your Honor, it would have.  The
5   firearm was test-fired.
6          THE COURT:  Okay.  Then Mr. Redrick should approach
7   the witness stand and Mr. Norris you can go with him with a
8   copy of the indictment.
9          (Defendant takes stand.)
10         (ANTONIO REDRICK, sworn.)
11         THE COURT:  Will you please state your true full
12  name?
13         THE DEFENDANT:  Antonio Redrick.
14         THE COURT:  Mr. Redrick, do you understand that you
15  just took an oath to answer the questions I'm going to ask you
16  truthfully and any failure to do that could be a separate
17  prosecutable criminal offense?
18         THE DEFENDANT:  Yes.
19         THE COURT:  In addition, do you understand that if
20  you're confused by any of my questions or unsure about what an
21  honest and accurate answer would be, I'll give you a chance to
22  talk to Mr. Norris to clear up any confusion so you can give me
23  a reliable response?
24         THE DEFENDANT:  Yeah.
25         THE COURT:  Have you ever been arrested or

1  convicted under any name other than Antonio Redrick?
2          THE DEFENDANT:  No.
3          THE COURT:  How old are you?
4          THE DEFENDANT:  31.
5          THE COURT:  Where were you born?
6          THE DEFENDANT:  Boston City Hospital.
7          THE COURT:  How far did you go in school?
8          THE DEFENDANT:  12th.
9          THE COURT:  Have you ever been treated for mental
10 illness or drug addiction?
11         THE DEFENDANT:  Yes.
12         THE COURT:  Which?
13         THE DEFENDANT:  Mental illness.
14         THE COURT:  When were you treated for mental
15 illness?
16         THE DEFENDANT:  From 5 to about 16.
17         THE COURT:  What kind of mental illness?
18         THE DEFENDANT:  ADD and blackouts and like --
19         THE COURT:  I'm sorry?  ADD and blackouts and what
20 else, please?
21         THE DEFENDANT:  And like having a bad temper.
22         THE COURT:  A bad temper.  Okay.  Have you been
23 talking with Mr. Norris about your case?
24         THE DEFENDANT:  Yes.
25         THE COURT:  And do you feel that you have

1  understood what's been going on?
2          THE DEFENDANT:  Yes.
3          THE COURT:  Do you think you understand what's
4  happening here today?
5          THE DEFENDANT:  Pretty much.
6          THE COURT:  What's happening?
7          THE DEFENDANT:  I'm pleading guilty.
8          THE COURT:  Are you today under the influence of
9  any drug, medication or alcohol?
10         THE DEFENDANT:  No.
11         THE COURT:  Have you received a copy of the
12 indictment charging you in two counts with being a felon in
13 possession of a firearm and also possessing a firearm that was
14 not registered in the National Firearms Registration?
15         THE DEFENDANT:  Yes.
16         THE COURT:  Did you read it?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Did you talk with Mr. Norris about what
19 the Government would have to prove, beyond a reasonable doubt,
20 to achieve your conviction on either or both of those charges?
21         THE DEFENDANT:  Yes.
22         THE COURT:  Are you fully satisfied with
23 Mr. Norris's work as your lawyer?
24         THE DEFENDANT:  Yes.
25         THE COURT:  Has anybody made any promises to you or

```
 1   given you any assurances to influence you to plead guilty?
 2            THE DEFENDANT:  No.
 3            THE COURT:  Has anybody threatened you or tried to
 4   force you to plead guilty?
 5            THE DEFENDANT:  No.
 6            THE COURT:  Do you understand that if I accept your
 7   plea of guilty, you'll become a Federal felon and you may lose
 8   certain rights, if you still have them, including the right to
 9   vote, to hold public office, to serve on a jury, and to possess
10   a firearm?
11            THE DEFENDANT:  Yes.
12            THE COURT:  What are the maximum possible penalties
13   and is there a mandatory minimum?
14            MR. MOORE:  Your Honor, there is no mandatory
15   minimum for either count and for both counts the maximum
16   penalties are up to 10 years of imprisonment, a fine of up to
17   250,000 dollars, up to 3 years of supervised release, and a
18   mandatory special assessment of 100 dollars.
19            THE COURT:  Do you understand that those are the
20   maximum possible penalties for each count?
21            THE DEFENDANT:  Yes.
22            THE COURT:  And, Mr. Norris, do you agree that
23   those are the maximum possible penalties?
24            MR. NORRIS:  Yes, I think the assessment is 200
25   dollars.
```

```
 1              THE COURT:  Well, it's 100 dollars on each count.
 2              MR. NORRIS:  That's correct.
 3              THE COURT:  And do you understand, Mr. Redrick,
 4   that supervised release means that if you're sent to prison,
 5   when you're released, you'll be under the supervision of the
 6   Probation Department on certain conditions, including the
 7   condition that you not commit any further crimes, and if you
 8   violate any off those conditions, you can be locked up again
 9   for up to the full term of your supervised release?
10              THE DEFENDANT:  Yes.
11              THE COURT:  Do you understand that the sentencing
12   in this case will take place under the advisory guideline
13   system that exists after the Supreme Court's decision last year
14   in **Booker**?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Have you talked to Mr. Norris about how
17   those advisory guidelines might operate in your case?
18              THE DEFENDANT:  Yes.
19              THE COURT:  Do you understand, however, as we sit
20   here today, neither Mr. Norris nor anybody else can tell you
21   with certainty what the guideline range is for your sentence or
22   what sentence I will impose, because until I conduct a
23   sentencing hearing, I cannot make those decisions myself.  Do
24   you understand?
25              THE DEFENDANT:  Yeah.
```

1     THE COURT: Okay. You understand that in a
2  relatively small number of cases, I have the power to depart
3  and give a sentence that's higher or lower than the guideline
4  range or give a sentence that varies from the guidelines, but
5  in most cases I'm required to give a sentence that is within
6  the guideline range?
7     THE DEFENDANT: Yes.
8     THE COURT: Do you understand that you and the
9  Government will have a right to appeal my sentence?
10    THE DEFENDANT: Yes.
11    THE COURT: Do you understand that if I give --
12 that's there's no parole in the Federal system. So if I
13 sentence you to prison, you will have to serve substantially
14 all of that time in prison?
15    THE DEFENDANT: Yes.
16    THE COURT: Do you understand that if I give you a
17 sentence that's higher than you hope for or even higher than
18 the Government recommends, that will not be a reason permitting
19 you to withdraw your guilty plea?
20    THE DEFENDANT: Yes.
21    THE COURT: Do you understand that you still have a
22 right, if you want to use it, to have a trial before a jury
23 that would start on Monday?
24    THE DEFENDANT: Yes.
25    THE COURT: Do you understand that in connection

1   with that, you would have a right to a lawyer, and if you
2   couldn't afford one, a lawyer would continue to be appointed to
3   represent you at public expense?
4           THE DEFENDANT: Yes.
5           THE COURT: Do you understand that if we had a
6   trial, you would be presumed innocent, you would not have to
7   prove you were innocent, rather, the Government would have to
8   prove you were guilty, beyond a reasonable doubt, to achieve
9   your conviction?
10          THE DEFENDANT: Yes.
11          THE COURT: Do you understand that if we had a
12  trial, through your lawyer you would have an opportunity to
13  object to the Government's evidence and challenge its
14  witnesses?
15          THE DEFENDANT: Yes.
16          THE COURT: Do you understand that at any trial you
17  would also have an opportunity, but not an obligation, to
18  present a defense?
19          THE DEFENDANT: Yes.
20          THE COURT: Do you understand that as part of that,
21  you have an opportunity, but not an obligation, to testify
22  yourself, and if you decided not to testify, I would instruct
23  the jury that it could draw no suggestion that you're guilty
24  from your decision not to testify?
25          THE DEFENDANT: Yes.

```
 1              THE COURT:  Do you understand that if I accept your
 2   guilty plea, you'll be giving up your right to a trial and
 3   there would be no trial?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  Count 1 charges you with being a felon
 6   in possession of a firearm.  Do you understand that to prove
 7   that charge, the Government would have to prove, beyond a
 8   reasonable doubt, that before June 4, 2004, you had been
 9   convicted in some court of at least one crime that is
10   punishable by a term of imprisonment of more than a year,
11   regardless of whether you were actually sentenced to serve more
12   than a year, and that you knowingly, that is, intentionally --
13   not by accident or mistake, but knowing that you had it,
14   possessed a firearm, and that that firearm, whether you knew it
15   or not, had traveled in interstate commerce.  Do you understand
16   that that's what the Government would have to prove?
17              THE DEFENDANT:  Yes.
18              THE COURT:  And do you understand that if the
19   Government could not prove, beyond a reasonable doubt, that you
20   knew you had the firearm in question here in your bag, the jury
21   would have to find you not guilty?
22              THE DEFENDANT:  Yes.
23              THE COURT:  The particular charge here, in Count 1
24   is that on or about June 4, 2004, at Boston, Massachusetts,
25   you, having previously been convicted in a court of a crime
```

```
 1   punishable by imprisonment for a term exceeding one year, did
 2   knowingly possess, in and affecting commerce, a firearm,
 3   particularly a Marlin, Model 90, .20 gauge shotgun with a
 4   particular serial number.  Do you know that's the charge?
 5               THE DEFENDANT:  Yes.
 6               THE COURT:  And did you convict that crime?
 7               THE DEFENDANT:  Yes.
 8               THE COURT:  Now, Count 2 charges you with
 9   possessing an unregistered firearm.  Do you understand that to
10   prove that crime, the Government would have to prove, beyond a
11   reasonable doubt, first, that on or about the date alleged in
12   the indictment you had possession of a firearm.  Second, that
13   you knew you were possessing a firearm.  Third, that that
14   firearm was not registered to you in the National Firearms
15   Registration, the transfer record, and the Government would
16   have to prove that the firearm was operable, it could shoot,
17   and that it was a shotgun that had an overall length of less
18   than 26 inches or a barrel of less than 18 inches.  Do you
19   understand that's what the Government would have to prove to
20   prove Count 2?
21               THE DEFENDANT:  Yes.
22               THE COURT:  Count 2 charges that on or about June
23   4, 2004, in Boston, you did knowingly possess a Marlin, Model
24   90, .20 gauge shotgun with a particular serial number, which is
25   modified and had an overall length of less than 26 inches and a
```

```
 1   barrel of less than 18 inches in length, which was not
 2   registered to you in the National Firearms Registration
 3   Transfer Record.  Did you commit that crime?
 4            THE DEFENDANT:  Yes.
 5            THE COURT:  Now, I would like you to listen while
 6   Mr. Moore briefly describes what the Government's evidence
 7   would have been if we went to trial, and I'm going to ask you
 8   if you agree with the Government's evidence of what you did?
 9            MR. MOORE:  Thank you, your Honor.
10       On June 4th, 2004, at around 10:00 a.m., Boston Police
11   officers, Muriel Stacco and Stephanie Bean, responded to a 911
12   call reporting a possible domestic violence incident in
13   progress at 200 Columbia Road in Dorchester, Massachusetts.
14   Upon arrival, the officers observed a male later found to be
15   Mr. Redrick in front of the apartment building carrying a
16   duffel bag.  Seeing him begin to walk away, Officer Stacco
17   asked that Mr. Redrick hold up, but Mr. Redrick instead began
18   to run in a direction opposite the officer and while doing so
19   dropped the duffel bag on or around Columbia Road.
20       One of the officers chased Mr. Redrick on foot and then
21   both officers returned to the bag.  Looking inside of the
22   duffel bag, the officers then found various miscellaneous
23   clothing articles, a sawed-off shotgun, later found to be a
24   Marlin, Model 90, .20 gauge shotgun bearing Serial Number
25   P852.
```

At that point, Officers Stacco and Bean called for other police units to assist in the search for Mr. Redrick. An MBTA K-9 unit arrived and offered to assist. Shortly thereafter, with the help of Caesar, the canine, Mr. Redrick was found perched on top of a small roof on the front of a large building on Vaughn Street and positioned almost directly above the officers who were then trapped by a tall wire fence on the ground level.

Officer Stacco verbally commanded that Mr. Redrick remain in his position and that he show his hands. In response, Mr. Redrick leapt off of the roof and resumed his flight from the officers. Moments later, Mr. Redrick was seen by Officer Marlin Wright running in an alley about two blocks away from where Officer Stacco located Mr. Redrick. Officer Wright knew Mr. Redrick from an interaction just days before.

Officer Wright was wearing his uniform and verbally ordered Mr. Redrick, who was running directly towards him, to stop. Mr. Redrick continued to run directly towards Officer Wright. Officer Wright then drew his sidearm, pointed it at Mr. Redrick, and again ordered him to stop. Mr. Redrick, now running directly towards Officer Wright, in a very narrow passageway, did not stop as Officer Wright continued his command that he do so.

As Mr. Redrick got within a few feet of Officer Wright, he turned and attempted to jump the fence. Officer Wright,

with his firearm still in his right hand, attempted to grab Mr. Redrick with his left hand. He pulled Mr. Redrick down from the fence and attempted to fasten the sidearm in the holster with one hand as Mr. Redrick continued to resist. Ultimately, Officer Wright was successful and then called further officers to assist him.

Officer Stacco then arrived and confirmed that the person then in custody, Mr. Redrick, was the same person she had seen carrying and dropping the duffel bag moments earlier. The firearm was examined by members of the Boston Police Department and ATF agents and it was determined that the barrels of the firearm measured 13.25 inches and that the overall length of the firearm was 21 5/8s inches. It was further determined that the firearm was manufactured outside of the District of Massachusetts.

In addition, Boston police firearms examiner Carl Washington test-fired the firearm and found that, it having successfully fired a shot, the shotgun did function as designed and was, in fact, a firearm for purposes of both state and Federal law. Subsequent to that determination, it was certified by the National Firearms Act branch of the ATF, which is lawfully responsible for maintaining a central registry of such firearms, and that the above-described firearm was not registered to Mr. Redrick as required by law. Further investigation revealed that Mr. Redrick had previously been

```
 1   convicted in a court of a crime punishable by a term of
 2   imprisonment for which the punishment exceeded one year.
 3             THE COURT:  Do you agree with the Government's
 4   summary of what you did?
 5             THE DEFENDANT:  Yes.
 6             THE COURT:  And how do you now wish to plead to
 7   these two counts against you, guilty or not guilty?
 8             THE DEFENDANT:  Guilty.
 9             THE COURT:  Then I'll instruct the Clerk to enter
10   your pleas of guilty because you were competent, you were
11   acting knowingly and voluntarily, you were effectively
12   represented, and there's an independent basis in fact to
13   support your guilty pleas.  You may take your seat at the table
14   again.
15             (Sits down.)
16             THE COURT:  The sentencing in this case, unless
17   somebody has a foreseeable conflict, will be May 31, 2006 at
18   3:00 p.m.  If there's any information outside the presentence
19   report, any motions or memos or letters, they shall be filed by
20   May 17th, any responses shall be filed by May 24th.  The
21   defendant is detained, his detention will continue.
22        I'm also going to release Mr. Ray now from the material
23   witness warrant.  Is there anything else that should be done?
24             MR. NORRIS:  Your Honor, are you going to issue a
25   scheduling order?
```

```
 1              THE COURT:  Yes.
 2              MR. NORRIS:  Okay.
 3              MR. MOORE:  Nothing from the Government, your
 4    Honor.
 5              THE COURT:  The Court is in recess.
 6              (Ends 4:00 p.m.)
 7
 8
 9                       C E R T I F I C A T E
10
11
12
13        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER, do
14   hereby certify that the foregoing record is a true and accurate
15   transcription of my stenographic notes, before
16   Chief Judge Mark L. Wolf, on Friday, February 24, 2006, to the
17   best of my skill and ability.
18
19
20
21
22
23   _____
24   RICHARD H. ROMANOW
25
```